IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Douglas J. GODESKY,
       Plaintiff                 :

                                      :     CIVIL NO.  L-06-589
v.                                    :     CIVIL NO.  AMD-06-1397

Michael O. LEAVITT,                :
       Defendant            :

MEMORANDUM

**I.     Introduction**

On March 31, 2003, the Centers for Medicare and Medicaid Services ("CMS"), a branch of the Department of Health and Human Services ("the Department"), terminated Douglas J. Godesky for bringing two loaded firearms to work.[1] In November 2003, Godesky's union filed a grievance on his behalf. The grievance was submitted to arbitration.[2] After a four day hearing, the arbitrator decided that suspension, as opposed to termination, was the appropriate penalty.

Godesky has filed two lawsuits whose claims directly or indirectly relate to the arbitration. In Godesky v. Leavitt (L-06-589), filed on March 6, 2006, Godesky challenges the paperwork that CMS placed in his personnel file to implement the arbitrator's decision. In Godesky v. Leavitt (AMD-06-1397), filed on June 5, 2006, Godesky challenges his termination and CMS's investigation that led to his termination. Both suits allege breach of contract,

---

[1]     To sue his former employer, Godesky has properly named Michael O. Leavitt, the Secretary of HHS, in his official capacity. See Simmons v. Shalala, 946 F. Supp. 415, 418 (D. Md. 1996), aff'd, 112 F.3d 510 (4th Cir. 1997). For sake of simplicity, the Court refers to the Defendant as "the Department."

[2]     The Department and the union's Collective Bargaining Agreement provided for arbitration of grievances.

violations of Title VII (42 U.S.C. § 2000e-16), the Fifth Amendment to the U.S. Constitution, and the Privacy Act (5 U.S.C. § 552a).

The two cases are related. Godesky's counsel should have noted this fact on the civil cover sheet that he filed with AMD-06-1397. Counsel did not do so, however. The Court recently became aware of this oversight, ordered AMD-06-1397 reassigned to the undersigned judge, and consolidated the two cases.

In order to integrate these cases, the Court will issue a scheduling order that will provide for a joint status report, any necessary discovery, and a briefing schedule. In order to effectuate the consolidated schedule, the Court will deny, without prejudice to refiling, the pending motions to dismiss in the two cases.[3] One of those motions has been briefed, but the other has not.

The parties will file a status report on April 9, 2007 that proposes a briefing schedule for summary judgment motions, recounts the discovery previously conducted through the administrative process, and describes the discovery to be done. At the end of discovery, the government will file a consolidated motion for summary judgment. The briefing will center on the questions framed herein.[4]

## II.     Background

Godesky worked for CMS as a senior technical advisor (level GS-15). On March 31, 2003, Godesky was detected bringing two loaded firearms into CMS's Baltimore office.[5] On

---

[3]     Both are two Motions to Dismiss, or in the Alternative, for Summary Judgment. The first motion, filed on July 27, 2006, is found at Godesky v. Leavitt, L-06-589 (Docket No. 9). The second, filed on March 21, 2007, is found at Godesky v. Leavitt, AMD-06-1397 (Docket No. 7).

[4]     Because the Court denies the Department's motions for summary judgment as premature, and because the Court has ordered a status report on discovery, the Court will DENY as MOOT Godesky's Motion for Discovery Pursuant to Fed. R. Civ. P. 56(f). See Godesky v. Leavitt, L-06-589 (Docket No. 19).

[5]     At arbitration, Godesky explained that he had mistakenly brought them onto CMS's premises.

November 7, 2003, CMS terminated him. Godesky's union filed a grievance on his behalf, which was eventually submitted to arbitration.

Meanwhile, Godesky looked for other work. On March 21, 2004, he was hired by the IRS as a management and program analyst (level GS-13). He began work there on March 22nd.

An arbitration hearing was held on four separate dates in March and April 2004. On June 11, 2004, the arbitrator decided that suspension was the more fitting penalty, and ordered CMS to reinstate Godesky.[6]

Godesky appealed one aspect of the arbitrator's opinion. Godesky had alleged that his termination was the result of discrimination based on gender (male), race (white), and age (over 40 years of age). The arbitrator held that the claims were untimely. The Merit Systems Protection Board (MSPB), to which Godesky appealed, considered his discrimination claims and rejected them on the merits.[7] Godesky appealed that decision to the EEOC, which affirmed on May 5, 2006. In its decision, the EEOC notified Godesky of his right to file suit in federal court to challenge the MSPB's decision. Godesky filed suit on June 5, 2006. The case was docketed as Godesky v. Leavitt, AMD-06-1397.

The Court now turns to L-06-589. Following the arbitrator's decision, on September 2, 2004, CMS notified Godesky that he would be reinstated on September 20, 2004. Godesky resigned from the IRS effective September 17, 2004.

---

[6] The arbitrator's written opinion provided: "[T]hat the appropriate discipline would have been to suspend the Grievant for one month without pay." The arbitrator further ordered that CMS should award Godesky full backpay and benefits for the period he was absent, "less that sum he would have foregone during the one month suspension."

[7] See Godesky v. Dep't of Health & Human Servs., 101 M.S.P.B. 280, 285-86 (March 15, 2006). The MSPB concluded that Godesky had failed to prove his race, gender, and age discrimination claims. Godesky argued that he was punished more severely than two comparitor employees who had brought weapons onto CMS premises. Inter alia, the MSPB pointed out that both of the comparitors were white, and that one was also over the age of forty. Id. at 286.

On September 20, Godesky reported to CMS. Just before lunch, however, he resigned. In his letter of resignation, Godesky stated that he had taken a job with the Corporation for National and Community Service (CNCS). He reported to CNCS that same afternoon.

On November 26th and 27th, 2004, Godesky filed complaints with the EEO.[8] On December 1, 2004, CMS wrote several standard personnel forms (Standard Form 50s or "SF-50s") and placed them in Godesky's permanent federal employment record.

On December 6, 2004, Godesky went to the EEO to complain about one of the SF-50s, the "Transfer SF-50," which indicated that Godesky had "transferred" from CMS to the IRS. Godesky alleged that the form portrayed him in a negative light, was contrary to the arbitration award, and constituted retaliation.[9] On March 7, 2005, Godesky filed a formal EEO complaint regarding the Transfer SF-50.

On March 21, 2005, the EEO dismissed the complaint for failure to state a claim. It held that Godesky's claim amounted to an impermissible attack on the negotiated grievance process. It reasoned that the claim and the Transfer SF-50 were firmly intertwined with the arbitration. CMS had generated the SF-50 in response to the arbitrator's award. If Godesky disagreed with how CMS implemented the award, Godesky must pursue that claim through the negotiated grievance process, as opposed to the EEOC.

---

[8]     The November 26th complaint, which alleged constructive discharge, is pending before an EEO judge. The November 27th complaint, in which Godesky alleged that CMS had discriminated against him in his efforts to rejoin CMS, was dismissed for failure to state a claim. Godesky appealed to the EEOC, which affirmed. See Godesky v. Leavitt, 2005 WL 1198576 *2 (E.E.O.C. May 11, 2005). The EEOC reasoned that Godesky's complaints concerned the agency's implementation of the arbitrator's decision, and were properly reserved for "the arbitration process" as opposed to "the EEO process." Id. (citing Wills v. Dep't of Defense, 1998 WL 454954 (E.E.O.C. June 30, 1998).

[9]     In L-06-589, Godesky alleges that CMS issued other SF-50s in addition to the Transfer SF-50 to retaliate against him.

4

On March 21, 2005, Godesky appealed the EEO's decision to the EEOC's Office of Federal Operations ("OFO"). The OFO affirmed, notifying Godesky that he had ninety days in which to file suit in district court. On March 3, 2006, Godesky filed suit. The case was docketed as L-06-589. On March 22, 2007, AMD-06-1397 and L-06-589 were consolidated.

**III.  Analysis**

    **A.  Godesky's Suits, the Court's Subject Matter Jurisdiction, and the Arbitration Process**:

        **1.  AMD-06-1397**:

In AMD-06-1397, Godesky challenges his termination and CMS's investigation of the March 31st, 2003 incident that led to his termination. He raises the following claims:

- Retaliation and Discrimination on the Basis of Race, Age, and Gender.
- Breach of Contract.
- Violation of Due Process.
- Violation of the Privacy Act.

        **2.  L-06-589:**

In L-06-589, Godesky challenges the paperwork that CMS placed in his personnel file to implement the arbitrator's decision. He raises the following claims:

- Title VII Retaliation.
- Breach of Contract.
- Violation of Due Process.
- Violation of the Privacy Act.

        **3.  Issues for Further Briefing:**

The suits raise two broad questions. The first asks the Court to determine the claims over which it has jurisdiction. The Department apparently concedes that the Court has jurisdiction

over the Title VII claim that Godesky appealed through the administrative process. It contends that jurisdiction over the other claims is lacking because they merely seek to enforce the arbitration award.

An agency's failure to comply with an arbitration award is an "unfair labor practice" (ULP).[10] See Dep't of Health & Human Servs., Social Sec. Admin. v. Federal Labor Relations Auth., 976 F.2d 1049 (D.C. Cir. 1992). The Department contends that Congress vested the Federal Labor Relations Authority (FLRA) with exclusive jurisdiction over enforcement of arbitration awards.[11] See, e.g., Columbia Power Trades Council v. United States Dep't of Energy, 671 F.2d 325, 327 (9th Cir. 1982). It maintains that Godesky should have filed a ULP charge with the FLRA's general counsel. 5 U.S.C. § 7118.

The second question asks whether any new claims (other than the Title VII claim and efforts to enforce the arbitration award) must be submitted to arbitration, as was Godesky's termination claim. When planning discovery and briefing the issues, the parties should focus on the following questions:

- What is the legal test for determining whether a claim is related to an arbitration award? What is the legal test for determining whether a claim must be presented to an arbitrator?

- Which of Godesky's claims are mere efforts to enforce the arbitration claim?

- Whether a plaintiff who wants to file a claim against an agency for an ULP must file a complaint with FLRA's general counsel pursuant to 5 U.S.C. § 7118.

- Whether Godesky missed the window within which to file a ULP.[12] If so, is Godesky left without a remedy?

---

[10] An agency must "take the actions required by an arbitrator's final award." 5 U.S.C. § 7122(b). The FSLMRS declares that "it shall be an unfair labor practice for an agency to 'otherwise fail or refuse to comply with any provision of this chapter." Id. § 7116(a)(8).

[11] The FLRA is a creature of the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. § 7101, et. seq.

6

- Does the FLRA recognize a legal principle, such as equitable tolling, to allow Godesky to seek enforcement after the six months have expired? Does filing of this suit toll the six month time limit?

- Does the Collective Bargaining Agreement provide for clarification or enforcement of an arbitration award? How is this handled?

- Godesky contends that his retaliation claim concerning the SF-50s do not relate to the arbitration. How does he distinguish his retaliation claim from one to enforce the arbitration award?

- Whether res judicata, collateral estoppel, or any other doctrine of finality operate to bar Godesky's claims.

- Whether the subject matter jurisdiction argument that the Department raised in L-06-589 has any application to the claims in AMD-06-1397, and vice-versa.

- What is the factual basis for Godesky's Privacy Act claims? Is he making a claim under § 552a(g)(1)(A)? If so, what steps has he taken to exhaust his administrative remedies?[13]

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, (i) DENY WITHOUT PREJUDICE TO REFILING the Department's Motions to Dismiss, or in the Alternative, for Summary Judgment, (ii) DENY as MOOT Godesky's Motion for Discovery Pursuant to Rule 56(f), and (iii) ORDER the parties to submit a joint status report on April 9, 2007.

---

[12]   A charge must be filed with the FLRA within six months of discovery of the ULP. See 5 U.S.C. § 7118(a)(4)(A)-(B).

[13]   Godesky must clarify his Privacy Act claims. In his opposition brief, Godesky cites § 552a(g)(1)(D), the Act's catch-all provision, but never identifies the "other provision[s]" of the Act that the Department violated. He does use language that could relate to U.S.C. §§ 552a(g)(1)(A) and 552a(g)(1)(C), but never makes clear if those provisions are actually the bases for his claim. Further confusing is Godesky's constant referral to the SF-50s as "illegal," because the Department was not his official "servicing personnel office." He never identifies the statute or regulation that makes it illegal for the Department to have generated the SF-50s. Nor does he ever explicitly connect this allegation to his Privacy Act claim(s).

Dated this 28th day of March 2007.

/s/
_____
Benson Everett Legg
Chief  Judge